IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KAREN H. JACKSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| -vs- § | Civil Case No. 2:11-cv-327-MEF-WC |
| § | |
| COUNTRYWIDE HOME LOANS, INC.; § | |
| BAC HOME LOANS SERVICING, L.P.; § | **TRIAL BY JURY REQUESTED** |
| and BANK OF AMERICA, N.A., § | |
| § | |
| Defendants. § | |

RECEIVED
2011 APR 28 P 3:37
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## COMPLAINT

### STATEMENT OF THE PARTIES

1.  This court has subject matter jurisdiction pursuant to 28 U.S.C. 1331, 1337(a) and 1345, and 15 U.S.C. 45(a) and 53(b).

2.  Venue is proper in the Middle District of Alabama under 28 U.S.C. 1391(b) and (c), and 15 U.S.C. 53(b). The transactions, errors and omissions giving rise to this action occurred in Autauga County, Alabama.

3.  Plaintiff is an adult citizen of Autauga County, Alabama.

4.  Defendant Countrywide Home Loans, Inc. ("Countrywide") is a foreign corporation with its principal place of business in California. Countrywide does business in Autauga County, Alabama. Countrywide is the entity that originated the loans at issue in this action and negotiated the terms that were misrepresented and ultimately breached.

5. Defendant BAC Home Loans Servicing, L.P. ("BAC") is a foreign corporation with its principal place of business in Texas. This Defendant does business in Autauga County, Alabama and is the successor corporation to one or more entities associated with Defendant Countrywide. BAC is the entity that services the loans at issue and as such, is one of the entities that has injured Plaintiff as described herein.

6. Defendant Bank of America, N.A. ("B of A") is a foreign corporation whose principal place of business is believed to be in California. B of A is the successor corporation to one or more Countrywide entities and is the alter-ego of BAC.

7. Defendants BAC and B of A will hereinafter be collectively referred to in the complaint as BAC or Defendants.

## STATEMENT OF FACTS

8. In or about October 2004, Plaintiff obtained a mortgage from Countrywide Home Loans, Inc. on the building where she operates her law practice (hereinafter the "business mortgage"). Defendants have assigned account number 083034171 to the business mortgage.

9. In or about 2006, Plaintiff refinanced a mortgage from Countrywide Home Loans, Inc. on her personal residence (hereinafter the "residential mortgage"). Defendants have assigned account number 16947795 to the residential mortgage.

10. In or about July 2008, Defendant BAC acquired Countrywide Financial, including Countrywide Home Loans, Inc.

11. Since 2004, at the origination of the first mortgage, Plaintiff has made timely payments to both accounts and has at not been delinquent. Despite this fact, Plaintiff has routinely been harassed by Defendants about being delinquent. Defendants have continuously

called, emailed and sent text messages at all hours of the day and night complaining that Plaintiff has been late on her payments.

12. In a letter dated January 28, 2010, Freddie Mac notified Plaintiff that it was now the owner of her mortgages. However, it is believed BAC is still the servicer of those mortgages. Defendants went on to claim in their letter to Plaintiff that she had "fallen behind in [her] payments." This was not a truthful statement.

13. On or about October 5, 2009, Defendants assessed a "Hazard Ins. Pmt." charge to Plaintiff's residential mortgage account in the amount of $512.76 despite the fact that Plaintiff already had the appropriate insurance.

14. On or about November 9, 2009, Defendants assessed a "County Tax Pmt" charge to Plaintiff's residential mortgage account in the amount of $705.56 despite the fact that Plaintiff had previously paid the ad valorem taxes due on the property.

15. In or about November 2009, Plaintiff received a notice from Defendants indicating that it did not have any proof of insurance on file for the business mortgage account.

16. In or about November 2009, Plaintiff mailed a copy of her insurance policy covering the business mortgage property to Defendants.

17. In or about December 2009, Defendants began reporting Plaintiff's residential mortgage account as past due to credit reporting agencies. Defendants continue to report Plaintiff's account as past due. At no point has Plaintiff been delinquent on this account.

18. On or about the following dates, Plaintiff received from Defendants account statements for her residential mortgage account stating that no payment had been received:

- January 28, 2010
- November 29, 2010

- December 8, 2010
- January 7, 2011

At no point had Plaintiff failed to send timely payments.

19. On or about the following dates, Plaintiff received from Defendants account statements characterizing her residential mortgage account as "in default":

- February 25, 2010
- March 22, 2010
- April 23, 2010
- May 28, 2010
- June 29, 2010
- July 29, 2010
- August 30, 2010
- September 29, 2010
- October 28, 2010

At no point has Plaintiff missed a payment that would justify her account being placed in default.

20. On or about the following dates, Plaintiff received from Defendants Notices of Intent to Accelerate her residential account:

- February 16, 2010
- March 19, 2010
- April 16, 2010
- May 18, 2010
- June 16, 2010

4

- July 19, 2010
- August 16, 2010
- September 16, 2010
- October 18, 2010
- November 16, 2010

Again, at no point has Plaintiff been delinquent in her account such that acceleration would be legally permissible.

21.     On or about May 25, 2010, Defendants sent a notice to Plaintiff that it had no proof on insurance on file for the business mortgage account. This statement was inaccurate since Plaintiff had previously submitted proof of insurance. Plaintiff responded to this statement by sending proof of insurance again.

22.     On or about June 8, 2010, Defendants sent a notice to Plaintiff that it had no proof on insurance on file for the business mortgage account. This statement was also untruthful.

23.     On or about July 16, 2010, Defendants wrongfully assessed a "Hazard Insurance Payment" charge to Plaintiff's business mortgage account in the amount of $900.00. This is as a result of Defendants wrongfully force placing insurance on the loan.

24.     On or about September 8, 2010, Plaintiff requested that Defendants correct its records of her home mortgage account to show that she was not in default on that account. She sent with this letter a list of her payments, including dates and amounts, in order to assist Defendants in correcting her account.

25.     On or about October 1, 2010, Defendants unilaterally and wrongfully increased payment amount to Plaintiff's business mortgage account via automatic withdrawal from $384.19 to $577.89. Defendants automatically withdrew this unauthorized amount from

Plaintiff's bank account. At no point did Plaintiff give permission for the increase in the automatic withdrawal amount.

26. On or about October 16, 2010, Plaintiff was denied an application for credit based on Defendants' misrepresentation to credit reporting agencies that her home mortgage account was in default. Defendants continue to report negative credit information despite the fact that Plaintiff has never been delinquent.

27. Plaintiff notified her bank on or about November 17, 2010, of the excessive and authorized withdrawal by Defendants that occurred on or about October 17, 2010.

28. On or about November 17, 2010, Plaintiff also filed a stop payment form with her bank for this excessive charge.

29. On or about November 1, 2010, Defendants automatically withdrew another payment of the increased amount of $577.89 from Plaintiff's bank account.

30. In a letter dated November 4, 2010, Plaintiff notified Defendants and demanded correction of the following problems with her home mortgage account:

- Misclassification of the account as "in default"
- Erroneous charges to the account of fees and late charges
- Misrepresentation to credit reporting agencies leading to the denial of credit to Plaintiff

31. On or about November 22, 2010, Defendants sent a letter to Plaintiff acknowledging the return of the $577.89 payment to Plaintiff's bank. No interest was added to the returned payment. The letter also requested payment in the amount of $577.89.

32. On or about November 30, 2010, Defendants sent Plaintiff an acknowledgement of Plaintiff's request to cancel automatic payment service. The acknowledgement listed the cancellation of service as "[e]ffective immediately." This acknowledgement furthermore

6

indicated that Plaintiff would henceforth receive "payment coupons with your monthly statements."

33.   At no time after November 30, 2010, has Plaintiff received monthly statements via mail.

34.   On or about November 17, 2010, Plaintiff notified Defendants and demanded correction of the following problems with her business mortgage account:

- Wrongful withdrawals of $577.89 on October 1, 2010, and November 1, 2010
- Unauthorized establishment of an escrow account
- Erroneous reflection of the status of the property as uninsured
- Erroneous assessment of her account as in default
- Misrepresentations to credit reporting agencies leading to the denial of credit to Plaintiff

35.   Plaintiff sent Defendants a second letter notifying it of these above mentioned problems with her business mortgage account on or about January 14, 2011. In this letter, Plaintiff also formally withdrew authorization to have mortgage statements emailed to her and directed Defendants to mail all future correspondence to her.

36.   On or about January 18, 2011, Plaintiff again notified Defendants, by letter accompanying her monthly payment, that she was not receiving monthly statements by mail.

37.   On or about January 18, 2011, Defendants sent Plaintiff a Notice of Intent to Accelerate her business mortgage account.

38.   On or about January 21, 2011, Defendants stopped recording payments made by Plaintiff as "Regular Payment" and instead recorded them as "Misc. Posting" on her accounts.

7

39. On or about February 24, 2011, Defendants wrongfully cancelled Plaintiff's credit card account ending in 7866. Defendants cited "serious delinquency" as a reason for canceling this account. The closing of this account hurt Plaintiff's credit rating.

40. At no point was the above-mentioned account (7866) delinquent. Similarly, Defendants have not reported this account as delinquent to credit reporting agencies.

41. On or about February 24, 2011, Defendants wrongfully cancelled Plaintiff's credit card account ending in 2285. Defendants cited "serious delinquency" as a reason for canceling this account. The closing of this account hurt Plaintiff's credit rating.

42. At no point was the above-mentioned account (2285) delinquent. Similarly, Defendants have not reported this account as delinquent to credit reporting agencies.

43. Defendants' conduct under the circumstances was negligent, fraudulent, intentional, reckless and/or willful and amounts to actual malice.

44. Plaintiff discovered the fraud within two (2) years of filing this lawsuit.

45. Defendants have entered into a pattern or practice of fraudulent conduct like that perpetuated against Plaintiffs.

46. At all times material hereto, Plaintiff depended on Defendants to advise her as to all initial loan requirements and insurance matters. Defendants had superior knowledge and bargaining power over Plaintiff and further held themselves out as experts.

47. Plaintiff's claims in this action arise as an operation of both Alabama law and federal statute.

## COUNT ONE

48.     Plaintiff realleges all prior paragraphs of the complaint as if set out here in full.

49.     Defendants made the aforementioned fraudulent representations that they knew were false, or should have known were false, and intended for Plaintiff to rely on said representations.

50.     Despite their statutory and common law duties, Defendants also failed to explain and/or affirmatively suppressed material facts that they knew Plaintiff wanted to know about, or should have been informed about.

51.     Plaintiff relied on the representations and omissions made by Defendants and was induced to act as previously described.

52.     As a proximate consequence of Defendants' actions, Plaintiff was injured and damaged in at least the following ways: she paid money, premiums and fees she otherwise did not have to pay, she became obligated under financial terms that were less favorable to her, she lost interest on the money, her credit rating and/or score was damaged, she was prevented access to previously established lines of credit and she suffered mental anguish and emotional distress; and has otherwise been injured and damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus cost.

## COUNT TWO

53.     Plaintiff realleges all prior paragraphs of the complaint as if set out here in full.

54.     Defendants negligently and/or wantonly hired, trained, and supervised their agents and/or representatives responsible for handling and/or servicing Plaintiff's accounts.

Defendant was similarly negligent in its hiring, training and supervision of the agents who advised Plaintiff of all the loan terms and other requirements.

55. As a proximate consequence of Defendants' actions, Plaintiff was injured and damaged as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus cost.

## COUNT THREE

56. Plaintiff realleges all prior paragraphs of the complaint as if set out here in full.

57. At all times relevant to this action, Defendants had a duty to responsibly handle and service Plaintiff's accounts.

58. Defendants negligently and/or wantonly handled and/or serviced the accounts listed above.

59. As a proximate consequence of Defendants' actions and breach of their common law and statutory duties, Plaintiff was injured and damaged as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus cost.

## COUNT FOUR

60. Plaintiff realleges all prior paragraphs of the complaint as if set out here in full.

61. Defendants actions were a breach of the contractual duties owed to Plaintiff and the other duties that arise as a matter of Alabama common law and statutory law.

62. As a proximate consequence of Defendants' actions, Plaintiff was injured and

damaged as described herein.

WHEREFORE, Plaintiff demands judgment against Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus cost.

## COUNT FIVE

63.   Plaintiff realleges all prior paragraphs of the complaint as if set out here in full.

64.   At all times relevant to this action, Defendants have been aware of the legal requirements of the Fair Debt Collections Practices Act, 15 U.S.C §1692, *et seq*.

65.   Defendants recklessly, knowingly and/or intentionally violated this statute and profited as a result.

66.   As a proximate consequence of Defendants' wrongful conduct, Plaintiff was injured and damaged as described herein.

WHEREFORE, Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus all statutory remedies and relief, including injunctive relief, attorneys' fees and cost.

## COUNT SIX

67.   Plaintiff realleges all prior paragraphs of the complaint as if set out here in full.

68.   At all times relevant to this action, Defendants have been aware of the legal requirements of the Fair Credit Reporting Act, 15 U.S.C §1681, *et seq*.

69.   Defendants recklessly, knowingly and/or intentionally violated this statute and profited as a result.

11

70. As a proximate consequence of Defendants' wrongful conduct, Plaintiff was injured and damaged as described herein.

WHEREFORE, Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus all statutory remedies and relief, including injunctive relief, attorneys' fees and cost.

### COUNT SEVEN

71. Plaintiff realleges all prior paragraphs of the complaint as if set out here in full.

72. Defendants intentionally inflicted emotional distress upon Plaintiff by threatening to foreclose on Plaintiff's property and with threats of acceleration, which Defendants had no right to do.

73. Defendants also intentionally inflicted emotional distress upon Plaintiff by harassing her by telephone and mail regarding the status of her mortgage loans and fees and charges which were being applied to Plaintiff's accounts improperly.

74. Such conduct was outrageous and in contravention of good conduct and good faith, and should thus be deemed repugnant by our society and an outrage.

75. As a result of said conduct by Defendants, Plaintiff was damaged and such damages include mental anguish and/or emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus cost.

*[signature]*
JERE L. BEASLEY (ASB-1981-A35J)

*[signature]*
WILSON DANIEL MILES, III (ASB-7656-M75W)

*[signature]*
C. LANCE GOULD (ASB-0913-G66C)

*[signature]*
ROMAN A. SHAUL (ASB-5043-S58R)

**ATTORNEYS FOR PLAINTIFF**

OF COUNSEL:

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Telephone No. (334) 269-2343
Facsimile No. (334) 954-7555
Jere.Beasley@BeasleyAllen.com
Dee.Miles@BeasleyAllen.com
Lance.Gould@BeasleyAllen.com
Roman.Shaul@BeasleyAllen.com

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL ISSUES RELATED TO THIS CAUSE**

*[signature]*
OF COUNSEL