IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KAREN H. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:11-cv-327-MEF |
| | ) | (WO) |
| COUNTRYWIDE HOME LOANS, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is a Motion to Dismiss (Doc. # 13), filed by Defendants Countrywide Home Loans, Inc. ("Countrywide"), BAC Home Loans Servicing, L.P. ("BACHLS"), and Bank of America, N.A. ("BANA") (collectively "Defendants"). Also pending before the court is Plaintiff's Motion for Preliminary Injunction. (Doc. # 21.) After a careful review of the arguments of counsel and the relevant law,[1] the court finds that Defendants' Motion to Dismiss is due to be **GRANTED**. Plaintiff's Motion for Preliminary Injunction is due to be **DENIED** as moot.

---

[1] Attached to Plaintiff's Response (Doc. # 17) and Defendants' Reply (Doc. # 18) to the Motion to Dismiss are evidentiary records. Rule 12(d) provides, in pertinent part: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Exercising its discretion, the court declines to convert Defendants' Motion to Dismiss to a motion for summary judgment, and consequently, will not consider any of the evidentiary submissions. *See* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 & n.17 (3d ed. 2004) (stating that "federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it" and collecting cases); *see also Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) (stating that "[a] judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings. According to case law, 'not considering' such matters is the functional equivalent of 'excluding' them – there is no more formal step required." ).

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1367(a). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint; thus, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint need not contain "detailed factual allegations," but must include enough facts "to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 545.

## III. BACKGROUND

Accepting as true the factual allegations in the Complaint (Doc. # 1), the Court finds the following facts:

Plaintiff is a lawyer, and in October 2004, obtained a business mortgage from Countrywide on the building where she operates her law practice. (Compl. ¶ 8.) In 2006, Plaintiff refinanced her residential mortgage, also with Countrywide. (Compl. ¶ 9.) In July 2008, Countrywide was acquired by BACHLS.[2]

Plaintiff alleges that she always has made timely payments on both mortgages and has not been delinquent. (Compl. ¶ 11.) Despite her non-delinquency, Plaintiff alleges that Defendants have mishandled her mortgages through a variety of contrivances.

Regarding Plaintiff's residential mortgage, Plaintiff alleges that her troubles began in late 2009, when Defendants wrongfully assessed charges to her account. (Compl. ¶¶ 13-14.) In January 2010, Defendants notified Plaintiff that she had "fallen behind in her payments." (Compl. ¶ 12.) Plaintiff received several letters from Defendants in the following months stating that no payment had been received for her residential mortgage. (Compl. ¶ 18.) Throughout 2010, Defendants sent to Plaintiff numerous statements indicating that her residential mortgage account was "in default." (Compl. ¶ 19.) Defendants also noticed Plaintiff during this period that Defendants intended to accelerate her residential mortgage. (Compl. ¶ 20.) On September 8, 2010, Plaintiff responded to these developments when she submitted to Defendants a list of Plaintiff's payments on her residential mortgage and requested that Defendants correct their records to reflect that Plaintiff was not in default on her residential mortgage. (Compl. ¶ 24.) Defendants apparently did not respond positively

---

[2] Plaintiff also alleges that BANA "is the alter-ego of [BACHLS]." (Compl. ¶ 6.)

to Plaintiff's request. Plaintiff alleges that on October 16, 2010, she was denied an application for credit based on Defendants' "misrepresentation to credit reporting agencies [("CRAs")] that her [residential] mortgage account was in default." (Compl. ¶ 26.) Plaintiff alleges that Defendants continue to report negative credit information to the CRAs despite the fact that Plaintiff has never been delinquent. Plaintiff, however, does not allege that she contacted the CRAs herself regarding Defendants' misrepresentative reporting.

Defendants' alleged handling of Plaintiff's business mortgage follows a similar track. Problems began in late 2009, when Defendants wrongfully informed Plaintiff that there was no proof of insurance on file for her business mortgage account property. (Compl. ¶ 15.) Despite sending the required proof of insurance at least twice, Defendants continued to send notices to Plaintiff stating that it had no proof of insurance on file. (Compl. ¶¶ 16, 21, 22.) On account of Defendants' continued insistence that Plaintiff had not obtained insurance on her business mortgage property, Defendants wrongfully assessed a $900 "Hazard Insurance Payment" charge to Plaintiff's business mortgage account. (Compl. ¶ 23.) Several months later, in October of 2010, Defendants "unilaterally and wrongfully increased payment amount" on Plaintiff's business mortgage account, and proceeded to automatically withdraw the higher payment from Plaintiff's bank account. (Compl. ¶ 25.) Plaintiff responded by notifying her bank of the unauthorized withdrawal and then filing with her bank a stop payment form. (Compl. ¶¶ 27, 28.) Defendants' allegedly excessive and unauthorized withdrawals continued, causing Plaintiff to draft a November 17, 2010 letter to Defendants

4

recounting the problems with her business mortgage account. (Compl. ¶ 34.) Shortly thereafter, Defendants returned $577.89 to Plaintiff's bank account, but requested payment for the same amount. (Compl. ¶ 31.) On January 18, 2011, Defendants sent to Plaintiff a notice of intent to accelerate Plaintiff's business mortgage account. (Compl. ¶ 37.) On January 21, 2011, Plaintiff alleges that Defendants "stopped recording payments made by Plaintiff as 'Regular Payment' and instead recorded them as 'Misc. Posting' on her accounts." (Compl. ¶ 38.)

Plaintiff alleges that Defendants wrongful conduct continued when Defendants cancelled Plaintiff's two credit card accounts, citing "seriously delinquency" as the reason. (Compl. ¶¶ 39, 41.) Plaintiff alleges that she was not delinquent in either account. (Compl. ¶¶ 40, 42.)

Plaintiff filed her seven-count Complaint on April 28, 2011, alleging several state law causes of action: fraudulent misrepresentation and/or suppression (Count I); negligent and/or wanton hiring, training, and supervision of the employees of Defendants responsible for handling or servicing Plaintiff's accounts (Count II); negligent and/or wanton servicing of Plaintiff's accounts (Count III); breach of contract (Count IV); and intentional infliction of emotional distress (Count VII). Plaintiff also brings claims under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* (Counts V and VI).

IV.  DISCUSSION

A.   **The FDCPA Claim**

Defendants assert that Plaintiff's FDCPA claim should be dismissed for two reasons. First, as a matter of law, Defendants argue that "mortgage servicing companies are not debt collectors under the FDCPA." (Defs.' Br. in Support 5.) Defendants argue secondarily that Plaintiff's allegations fail to satisfy Rule 8(a).

"The FDCPA was enacted by Congress to 'eliminate abusive debt collection practices by *debt collectors*.'" *Ausar-El ex rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing, LP*, No. 11-10453, 2011 WL 4375971, at *1 (11th Cir. Sept. 21, 2011) (unpublished) (emphasis added) (quoting 15 U.S.C. § 1692(e)). A "debt collector" is a "term of art[,]" *Small, Jr.*, 2011 WL 4375971, at *1, and is statutorily defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . .

§ 1692a(6). In determining whether BACHLS (the same BACHLS here) was a debt collector, the Eleventh Circuit in *Small, Jr.* noted this general "debt collector" definition, but then focused on language found later in the same definitional subsection: "For the purpose of [§] 1692f(6) of this title, [the term 'debt collector'] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* In concluding that "an enforcer of a security interest only qualifies as a 'debt collector' for the purpose of § 1692f(6)[,]" the

Eleventh Circuit relied upon the statutory interpretation doctrine of *expressio unius est exclusio alterius*. *Small, Jr.*, 2011 WL 4375971, at *1. In other words, because Congress defined a security interest enforcer as a debt collector only for purposes of § 1692f(6), it necessarily must have intended for security interest enforcers not to qualify as debt collectors under any other section of the FDCPA. Additionally, because "a party's general, not specific, debt collection activities are determinative of whether [that party] meet[s] the statutory definition of debt collector[,]" *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006), this court is inclined to follow the Eleventh Circuit's determination that BACHLS is not a "debt collector" except for violations of § 1692f(6). *Small, Jr.*, 2011 WL 4375971, at *1 (citing *Montgomery v. Huntington Bank*, 346 F.3d 693, 700 (6th Cir. 2003)). The Court also concludes, based on Plaintiff's allegations, that BANA and Countrywide are not "debt collectors" except for violations of § 1692f(6). Plaintiff alleges that BANA is merely an "alter-ego" of BACHLS. (Compl. ¶ 6.) As an "alter-ego," BANA should be treated no differently than BACHLS. Furthermore, Countrywide is alleged to be the original mortgagee for both mortgages. (Compl. ¶ 8.) As mortgagee, Countrywide is a security interest holder or enforcer and, accordingly, is not a debt collector except for the purposes of § 1692f(6).

However, Plaintiff's FDCPA count fails to allege a specific provision of the FDCPA that Defendants violated. Rather, Plaintiff merely alleges that Defendants "violated this statute and profited as a result." (Compl. ¶ 65.) As stated above, Defendants may qualify as "debt collectors" only if Plaintiff alleges violations of § 1692f(6). However, Defendants

are presently in the position of not knowing whether they are, in fact, debt collectors.  This is the reason for which an FDCPA plaintiff must allege a violation of a specific provision of the FDCPA.  *See Nix v. Welch & White, P.A.*, 55 F. App'x 71, 73 (3d Cir. 2003) ("[T]he complaint here fails to satisfy the minimal pleading requirements of Rule 8(a) because it merely alleges defendants' actions 'embodied violations of the [FDCPA]' and 'violated the [FDCPA] in other ways.'  These are conclusory allegations . . . .  As a result, plaintiffs did not provide notice to defendants as to how their actions allegedly violated the FDCPA."); *see also Twombly*, 550 U.S. at 555.  Accordingly, Plaintiff's FDCPA claim is due to be dismissed without prejudice.

B.     **The FCRA Claim**

Defendants also argue that Plaintiff's FCRA claim should be dismissed pursuant to Rule 12(b)(6).  As grounds, Defendants argue that 15 U.S.C. § 1681s-2(b) requires Plaintiff to have "notified a [CRA] of her credit dispute or [for] Defendants [to have] received notice of a dispute from a credit reporting agency . . . ."  (Defs.' Br. in Support 5.)  Plaintiff does not dispute this point or Defendants' authorities in making this point.  (Pl.'s Resp. 6.)  Nor does Plaintiff attempt to argue that such an allegation is present in the Complaint.  Rather, Plaintiff merely urges that her FCRA claim be dismissed without prejudice.  (Pl.'s Resp. 6.)  The Court will indulge Plaintiff's request.

## C. The State Law Claims

28 U.S.C. § 1367(c) states that "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." § 1367(c)(3). Having dismissed Plaintiff's FDCPA and FCRA claims, the court exercises its discretion to decline supplemental jurisdiction, for the time being, over Plaintiff's state law claims. *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1185 (11th Cir. 2003) (a district court's decision to decline supplemental jurisdiction is reviewed for abuse of discretion).

## V. CONCLUSION

For the reasons set forth above, it is ORDERED that: Defendants' Motion to Dismiss (Doc. # 13) is GRANTED; Plaintiff's Complaint (Doc. # 1) is DISMISSED without prejudice; supplemental jurisdiction over Plaintiff's state law claims is DECLINED; and Plaintiff's Motion for Preliminary Injunction (Doc. # 21) is DENIED as moot. Failure to file an Amended Complaint **on or before November 28, 2011**, will result in dismissal of this action with prejudice.

DONE this 7th day of November, 2011.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE