IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KAREN H. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:11-cv-327-MEF |
| | ) | (WO – Do Not Publish) |
| COUNTRYWIDE HOME LOANS, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion to Dismiss (Doc. # 26), filed by Defendants Countrywide

Home Loans, Inc. ("Countrywide"), BAC Home Loans Servicing, L.P. ("BACHLS"), and

Bank of America, N.A. ("BANA") (collectively "Defendants").  After a careful review of

the arguments of counsel and the relevant law, the court finds that Defendants' Motion to

Dismiss is due to be **GRANTED** in part and **DENIED** in part.

## I.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331, 1337, and 1367(a).  The parties do not contest personal jurisdiction or venue, and

the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may

move to dismiss a complaint for failure to state a claim upon which relief may be granted.

*See* Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of a

complaint; thus, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint need not contain "detailed factual allegations," but must include enough facts "to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 545.

In addition to considering the properly pleaded allegations in a complaint, the court also may consider on a motion to dismiss any exhibits attached to the complaint, *see Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005), as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III.  BACKGROUND

Accepting as true the factual allegations in the Amended Complaint (Doc. # 23), the Court finds the following facts:

Plaintiff is a lawyer, and in October 2004, obtained a business mortgage from Countrywide on the building where she operates her law practice.  (Am. Compl. ¶ 8.)  In

2006, Plaintiff refinanced her residential mortgage, also with Countrywide. (Am. Compl. ¶ 9.) In July 2008, Countrywide was acquired by BACHLS.[1]

Plaintiff alleges that she has always made timely payments on both mortgages and has not been delinquent. (Am. Compl. ¶ 11.) Despite her non-delinquency, Plaintiff alleges that Defendants have mishandled her mortgages through a variety of contrivances.

Regarding Plaintiff's residential mortgage, Plaintiff alleges that her troubles began in late 2009, when Defendants wrongfully assessed charges to her account. (Am. Compl. ¶¶ 15-16.) In January 2010, Defendants notified Plaintiff that she had "fallen behind in her payments." (Am. Compl. ¶ 12.) One month prior, Defendants allegedly began reporting Plaintiff's residential mortgage account as past due to credit reporting agencies. (Am. Compl. ¶ 19.) Plaintiff received several letters from Defendants in the following months stating that no payment had been received for her residential mortgage. (Am. Compl. ¶ 20.) Throughout 2010, Defendants sent to Plaintiff numerous statements indicating that her residential mortgage account was "in default." (Am. Compl. ¶ 21.) Defendants also noticed Plaintiff during this period that Defendants intended to accelerate her residential mortgage. (Am. Compl. ¶ 22.) On September 8, 2010, Plaintiff responded to these developments when she submitted to Defendants a list of Plaintiff's payments on her residential mortgage and requested that Defendants correct their records to reflect that Plaintiff was not in default on her residential mortgage. (Am. Compl. ¶ 26.) Defendants apparently did not respond

---

[1] Plaintiff also alleges that BANA "is the alter-ego of [BACHLS]." (Am. Compl. ¶ 6.)

positively to Plaintiff's request.  Plaintiff alleges that on October 16, 2010, she was denied an application for credit based on Defendants' "misrepresentation to credit reporting agencies [("CRAs")] that her [residential] mortgage account was in default."  (Am. Compl. ¶ 28.) Plaintiff alleges that Defendants continue to report negative credit information to the CRAs despite the fact that Plaintiff has never been delinquent.  Plaintiff alleges that she filed a statement of dispute with the CRAs in October of 2010, and received a report from Experian on October 22, 2010.  (Am. Compl., Ex. A.)

Defendants' alleged handling of Plaintiff's business mortgage follows a similar track. Problems began in late 2009, when Defendants wrongfully informed Plaintiff that there was no proof of insurance on file for her business mortgage account property.  (Am. Compl. ¶ 17.)  Despite sending the required proof of insurance at least twice, Defendants continued to send notices to Plaintiff stating that it had no proof of insurance on file.  (Am. Compl. ¶¶ 18, 23, 24.)  On account of Defendants' continued insistence that Plaintiff had not obtained insurance on her business mortgage property, Defendants wrongfully assessed a $900 "Hazard Insurance Payment" charge to Plaintiff's business mortgage account.  (Am. Compl. ¶ 25.)  Several months later, in October of 2010, Defendants "unilaterally and wrongfully increased payment amount" on Plaintiff's business mortgage account, and proceeded to automatically withdraw the higher payment from Plaintiff's bank account.  (Am. Compl. ¶ 27.) Plaintiff responded by notifying her bank of the unauthorized withdrawal and then filing with her bank a stop payment form.  (Am. Compl. ¶¶ 30, 31.)  Defendants' allegedly

4

excessive and unauthorized withdrawals continued, causing Plaintiff to draft a November 17, 2010 letter to Defendants recounting the problems with her business mortgage account. (Am. Compl. ¶ 36.) Shortly thereafter, Defendants returned $577.89 to Plaintiff's bank account, but requested payment for the same amount. (Am. Compl. ¶ 34.) On January 18, 2011, Defendants sent to Plaintiff a notice of intent to accelerate Plaintiff's business mortgage account. (Am. Compl. ¶ 39.) On January 21, 2011, Plaintiff alleges that Defendants "stopped recording payments made by Plaintiff as 'Regular Payment' and instead recorded them as 'Misc. Posting' on her accounts." (Am. Compl. ¶ 40.)

Plaintiff alleges that Defendants' wrongful conduct continued when Defendants cancelled Plaintiff's two credit card accounts, citing "seriously delinquency" as the reason. (Compl. ¶¶ 41, 43.) Plaintiff alleges that she was not delinquent in either account. (Am. Compl. ¶¶ 42, 44.)

Plaintiff first Complaint (Doc. # 1) was dismissed with leave to re-file on November 7, 2011 (Doc. # 22). Plaintiff's Amended Complaint alleges several state law causes of action: fraudulent misrepresentation and/or suppression (Count I); negligent and/or wanton hiring, training, and supervision of the employees of Defendants responsible for handling or servicing Plaintiff's accounts (Count II); negligent and/or wanton servicing of Plaintiff's accounts (Count III); breach of contract (Count IV); intentional infliction of emotional distress (Count VII); and defamation (Count VIII). Plaintiff also brings claims (Counts V

and VII) under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and (Count VI) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

In the Court's first Memorandum Opinion and Order dismissing Plaintiff's Complaint with leave to re-file, the Court was unable to conclude, based upon Plaintiff's pleadings, whether Defendants qualified as "debt collectors" for purposes of the FDCPA. (Mem. Op. 6-8.) The Court also dismissed Plaintiff's FCRA claim without prejudice because she did not allege that Defendants were notified by a CRA of Plaintiff's credit dispute. (Mem. Op. 8.) In so concluding, the Court declined, for the time being, to exercise supplemental jurisdiction. (Mem. Op. 9.)

## IV.  DISCUSSION

### A.    The FDCPA Claims (Counts V and VII)

Defendants persist in their arguments that Plaintiff's FDCPA claims fail as a matter of law. (Br. in Support 5-7.) "The FDCPA was enacted by Congress to 'eliminate abusive debt collection practices by *debt collectors*.'" *Ausar-El ex rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing, LP*, 448 F. App'x 1, 1 (11th Cir. 2011) (emphasis added) (quoting 15 U.S.C. § 1692(e)). A "debt collector" is a "term of art[,]" *id.*, and is statutorily defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . .

§ 1692a(6).   In determining whether BACHLS (the same BACHLS here) was a debt collector, the Eleventh Circuit in *Small, Jr.* noted this general "debt collector" definition, but then focused on language found later in the same definitional subsection:  "For the purpose of [§] 1692f(6) of this title, [the term 'debt collector'] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  *Id.*  In concluding that "an enforcer of a security interest only qualifies as a 'debt collector' for the purpose of § 1692f(6)[,]" the Eleventh Circuit relied upon the statutory interpretation doctrine of *expressio unius est exclusio alterius*.  *Small, Jr.*, 448 F. App'x at 1.  In other words, because Congress defined a security interest enforcer as a debt collector only for purposes of § 1692f(6), it necessarily must have intended for security interest enforcers not to qualify as debt collectors under any other section of the FDCPA.

Additionally, because "a party's general, not specific, debt collection activities are determinative of whether [that party] meet[s] the statutory definition of debt collector[,]" *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006), this court is inclined to follow the Eleventh Circuit's determination that BACHLS is not a "debt collector" except for violations of § 1692f(6).  *Small, Jr.*, 448 F. App'x at 1 (citing *Montgomery v. Huntington Bank*, 346 F.3d 693, 700 (6th Cir. 2003)).  This legal conclusion renders meaningless Plaintiff's assertions that she can establish "debt collector" status based upon individual communications from Defendants to Plaintiff. (Pl.'s Resp. 5.)  The Court also concludes that

7

BANA and Countrywide are not "debt collectors" except for violations of § 1692f(6). Plaintiff alleges that BANA is merely an "alter-ego" of BACHLS.  (Am. Compl. ¶ 6.)  As an "alter-ego," BANA should be treated no differently than BACHLS.  Furthermore, Countrywide is alleged to be the original mortgagee for both mortgages. (Am. Compl. ¶ 8.) As mortgagee, Countrywide is a security interest holder or enforcer and, accordingly, is not a debt collector except for the purposes of § 1692f(6).

Plaintiff's FDCPA causes of action rely upon §§ 1692d(5), 1692e(2), (5), (8), (10) & (11), and 1692f(1).  Nowhere is there a claim under § 1692f(6).  Because Defendants qualify as "debt collectors" only for purposes of § 1692f(6), Plaintiff's FDCPA causes of action (Counts V and VII) are due to be dismissed with prejudice.

**B.      The FCRA Claim (Count VI)**

Defendants submit that Plaintiff's FCRA claim should be dismissed pursuant to Rule 12(b)(6). (Br. in Support 7.)  First, Defendants state that a number of the alleged FCRA violations – those asserted under 15 U.S.C. § 1681s-2(a) – do not give rise to a private right of action.  (Br. in Support 7.)  The Eleventh Circuit has held that the FCRA "explicitly bars private suits for violations of [§ 1681s-2(a)]." *Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 369-70 (11th Cir. 2009); *see also Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002). Accordingly, Plaintiff's FCRA claims arising under § 1681s-2(a) are due to be dismissed.

Plaintiff also asserts claims under § 1681s-2(b)(1).  Specifically, Plaintiff alleges (1) that Defendants failed to correct reporting errors after receiving notice of Plaintiff's dispute, (Am. Compl. ¶¶ 87, 88), and (2) that Defendants failed to give Plaintiff notice of the results of any investigation conducted as a result of Plaintiff's credit dispute, (Am. Compl. ¶¶ 93, 94).  Plaintiff's latter theory can be dispensed with because no such duty is found within § 1681s-2(b)(1).  The furnisher is required to "report the results of the investigation to the consumer reporting agency[.]"  § 1681s-2(b)(1)(C).  There is no statutory duty to report the investigation results directly to the consumer, in this case the Plaintiff.

Defendants make two arguments as to Plaintiff's failure-to-correct claim under § 1681s-2(b).  First, Countrywide argues that Plaintiff's factual allegations reveal that Plaintiff cannot state a viable FCRA claim against Countrywide under § 1681s-2(b).  Plaintiff asserts in the Amended Complaint that she filed her dispute with the CRAs in October of 2010. (Am. Compl. ¶ 29.)  Plaintiff also asserts, however, that Countrywide no longer owned her mortgages as of January of 2010.  Section 1681s-2(b) is triggered only when a furnisher of information receives notice of a credit dispute.  Based upon the factual allegations, Countrywide could not have received such notice until many months after it no longer had any interest (and consequently, any information to furnish or correct) in Plaintiff's mortgages.  Accordingly, Plaintiff's FCRA failure-to-correct claim is due to be dismissed as to Defendant Countrywide.

Second, Defendants argue that Plaintiff has failed to allege that the CRAs notified Defendants of the credit dispute, which, Defendants argue, is a necessary triggering event for their obligations under § 1681s-2(b). Several courts of appeals have held that to state a claim under § 1681s-2(b), "the plaintiff must show that the furnisher received notice from a consumer reporting agency . . . that the credit information is disputed." *Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, 853-54 (6th Cir. 2004) (citing *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639-40 (5th Cir. 2002)); *see also Green v. RBS Nat. Bank*, 288 F. App'x 641, 642-43 (11th Cir. 2008) (stating that "[t]he FCRA does provide a private right of action for a violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency").

Plaintiff was put on notice of this pleading requirement by Defendant's first motion to dismiss (Doc. # 14, at 7), and requested that the Court dismiss her FCRA claim with leave to re-file. The Court indulged Plaintiff's request and allowed her to file an amended complaint. In her Amended Complaint, Plaintiff alleges that she herself notified the CRAs, but still omits the necessary allegation: that the furnisher of information received notice of Plaintiff's dispute from a CRA. In spite of Plaintiff's persistent failure to effectively allege her FCRA claim, the Court can draw a reasonable conclusion from the Amended Complaint that Defendants actually received notice of Plaintiff's credit dispute. *See* 15 U.S.C. § 1681i(a)(2) (stating that the CRA shall provide notice of a consumer's dispute to the

furnisher of information); (Am. Compl., Ex. A ("We completed investigating any items you disputed *with the sources of the information . . . .*")); *Twombly*, 550 U.S. at 570 (concluding that plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible"). Despite the existence of this plausible inference that Defendants BANA and BACHLS were contacted by at least one CRA about Plaintiff's credit dispute, BANA and BACHLS are nevertheless entitled to respond to a clearly pleaded complaint. Plaintiff will be directed to re-plead her FCRA failure-to-correct claim as to BANA and/or BACHLS. No further amendments will be allowed without leave of Court and good cause, however.

## C.   <u>Plaintiff's State Law Claims</u>

### 1.     *Preemption of Defamation Claim (Count VIII)*

Defendants argue that Plaintiff's state law claims, "to the extent that [they] relate to Defendant[s'] reporting and investigative duties under the FCRA," are preempted. (Br. in Support 9.) The only claim in the Amended Complaint that so relates is Count VIII, Plaintiff's defamation claim. Defendants argue that Plaintiff's claim is preempted by § 1681t(b)(1)(F). Plaintiff counters that § 1681h(e)'s savings clause is applicable because Plaintiff has alleged that Defendants' conduct was malicious and done with a willful intent to injure Plaintiff.

Both parties cite *Lofton-Taylor v. Verizon Wireless* as support. 262 F. App'x 999 (11th Cir. 2008). In that case, the Eleventh Circuit granted summary judgment in favor of the defendant on the plaintiff's claims for defamation and invasion of privacy, ruling that

11

they were preempted by § 1681h(e) because the summary judgment evidence revealed that the information furnished was neither false nor disclosed with malice or willful intent to injure the consumer. *Id.* at 1002. In so concluding, the Eleventh Circuit expressly withheld an opinion on "whether the preemption language in § 1681t(b)(1)(F) [was] broad enough to also preclude [the plaintiff's] claims." *Id.* at 1003. Accordingly, *Lofton-Taylor* does not offer much guidance on the interaction of §§ 1681h(e) and 1681t(b)(1)(F).

Several other courts of appeals have concluded that § 1681t(b)(1)(F) preempts state law defamation claims arising out of a furnisher's obligations under § 1681s-2, notwithstanding the savings clause of § 1681h(e). In *Purcell v. Bank of America*, the Seventh Circuit addressed the interaction of §§ 1681h(e) and 1681t(b)(1)(F): "Section 1681h(e) preempts *some* state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) [simply] preempts *more* of these claims." 659 F.3d 622, 625 (7th Cir. 2011) (emphasis added). The Seventh Circuit explained the interaction of the two preemption provisions by noting that §§ 1681t(b)(1)(F) and 1681s-2 were enacted together twenty-six years after § 1681h(e), and reasoning that the "extra federal remedy in § 1681s-2 was accompanied by the extra preemption in § 1681t(b)(1)(F) . . . ." *Id.* Accordingly, the Seventh Circuit found that a reading of § 1681h(e) that "defeat[ed] the later-enacted system in § 1681s-2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation." *Id.*; *see also Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47-48 (2d Cir. 2011) (finding *Purcell*'s reasoning persuasive); *Marshall v. Swift River Academy, LLC*, 327 F. App'x 13,

15 (9th Cir. 2009) (state law claims based upon information provided by furnisher to CRA were preempted by § 1681t(b)(1)(F)); *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009) (state law libel and false-light invasion of privacy claims preempted by § 1681t(b)(1)(F)).  Based upon the above-cited authorities, the Court concludes that Plaintiff's argument that § 1681h(e)'s savings clause applies over § 1681t(b)(1)(F) for Plaintiff's defamation claim (based upon duties found within § 1681s-2(b)) is due to be rejected.  Plaintiff's defamation claim will be dismissed with prejudice.

### 2.    *Plaintiff's Remaining State Law Claims*

Defendants contend that Plaintiff's remaining allegations regarding her claims for fraud (Count I), negligent hiring (Count II), negligent servicing (Count III), breach of contract (Count IV), and intentional infliction of emotional distress (Count VII) are legally deficient and that the claims are due to be dismissed under Rule 12(b)(6).

### a.    <u>Negligent Servicing (Count III)</u>

Plaintiff's claim for negligent or wanton loan servicing offers a breach of contract dish, but is listed on the menu as a tort.  "Alabama [law] does not recognize a tort-like cause of action for the breach of a duty created by contract."  *Blake v. Bank of America, N.A.*, No. 3:11cv242, 2012 WL 607976, at *3 (M.D. Ala. Feb. 27, 2012) (Fuller, J.) (published).  A "'negligent failure to perform a contract . . . is but a breach of the contract.'"  *Id.* (quoting *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1956)); *see also Barber v. Business*

13

*Prods. Ctr.*, 677 So. 2d 223, 228 (Ala. 1996) (stating that "a mere failure to perform a contractual obligation is not a tort").

Plaintiff alleges that Defendants had a duty to responsibly handle and service Plaintiff's accounts and that Defendants breached that duty. (Am. Compl. ¶¶ 65-66.) These alleged duties and breaches clearly would not exist but for the contractual relationship between the parties. There is no duty owed to the general public to properly service mortgage accounts. Plaintiff complains, however, that some of her grievances concerning Defendants' alleged malfeasance (false representations concerning property insurance, unilateral increases in amount of withdrawal, and harassing conduct) are not covered by the contract and cannot be pleaded as breach of contract claims.

The Court first notes that concomitant with any contractual relationship is an implied covenant (a *contractual* duty) of good faith and fair dealing. *See Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88 (1917); *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79 (1933) (every contract contains an implied covenant of good faith and fair dealing); *see also Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.*, 837 So.2d 253, 267 (Ala. 2002) ("There is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract; . . . in every contract there exists an implied covenant of good faith and fair dealing." (quoting *Sellers v. Head*, 73 So. 2d 747, 751 (Ala. 1954))); *Restatement (Second)*

14

*of Contracts* § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.").

Second, in attempting to argue that she cannot assert some of her grievances under a breach of contract theory, Plaintiff actually concedes the opposite:  "The contract does not require *(or allow)* Defendants to [unilaterally] increase the amount of money they automatically withdraw . . . ."  (Pl.'s Resp. 19 (emphasis added).)  By arguing that the contract does not allow Defendants to engage in certain conduct, Plaintiff is, in fact, arguing that Defendants are in breach of the contract.

Finally, there are other causes of action available (other than the non-existent claim of negligent or wanton servicing) for some of these grievances.  In sum, because Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing, *Blake*, 2012 WL 607976, at *4, Count III is due to be dismissed with prejudice.

### b.    Fraud (Count I)

Defendants argue that Plaintiff has not satisfied the heightened pleading requirement for fraud claims under Rule 9(b), which states that "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . .  Malice, intent, knowledge, and other conditions of a persons mind may be alleged generally."  Fed. R. Civ. P. 9(b).

The Eleventh Circuit has stated that "[t]he particularity requirement of Rule 9(b) is satisfied if the complaint alleges 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they

occurred, and who engaged in them.'"  *U.S. ex re. Matheny v. Medco Health Solutions, Inc.*,

No. 10-15406, 2012 WL 555200, at *3 (11th Cir. Feb. 22, 2012) (quoting *Hopper v. Solvay*

*Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)); *see also Ziemba v. Cascade Intern.,*

*Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (noting the pleading standards are satisfied if the

plaintiff alleges precisely what statements were made in what documents, when, where and

by whom, the content, the manner in which they misled the plaintiff, and what the defendants

obtained as a consequence of the fraud).

The Amended Complaint comes nowhere close to satisfying the heightened pleading

requirement of Rule 9(b).  In pleading Count I, Plaintiff refers to "aforementioned fraudulent

representations," (Am. Compl. ¶ 57), but nowhere in the factual allegations, aside from an

all-encompassing reference to fraudulent "conduct under the circumstances," (Am. Compl.

¶ 51), are any fraudulent representations truly aforementioned.  The same is true with respect

to Plaintiff's allegation that Defendants fraudulently suppressed unidentified "material

facts[.]" (Am. Compl. ¶ 58.)  A comparison of what Plaintiff has actually pleaded regarding

Defendants' alleged fraud to what Plaintiff is required to plead under Rule 9(b) reveals how

devoid the Amended Complaint is of necessary factual allegations.  The persistent references

to "Defendants" generically throughout the entire Amended Complaint is troubling generally,

but it is lethal to Plaintiff's fraud claims.   Plaintiff must identify with specificity who

engaged in the fraudulent acts.   Moreover, there are no details concerning the alleged

fraudulent acts, much less any identification at all of the fraudulent acts themselves, or when

they occurred.  In short, Plaintiff's fraud count more or less consists of a bare recitation of the elements of the cause of action, which is insufficient to satisfy the heightened pleading standard of Rule 9(b).  Count I is due to be dismissed with prejudice.

### c.   Intentional Infliction of Emotional Distress (Tort of Outrage) (Count VII)

"The tort of outrage is an extremely limited cause of action." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000).  In order to recover, a plaintiff must show that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.  *Id.* (quoting *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990)). Alabama courts have allowed recovery on a tort of outrage claim in three narrow circumstances:  (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment. *Id.* (citing cases); *see also Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011).  Although the Alabama Supreme Court has cautioned against an interpretation of the tort of outrage as being viable *only* in those three circumstances, *Little*, 72 So. 3d at 1173, it is not this Court's commission to redefine the present boundaries of state law claims.  Accordingly, Plaintiff's tort of outrage claim, which is related to Defendants' alleged debt collection efforts and which does not fall into one of the presently recognized contexts in which a tort of outrage claim is appropriate, is due to be dismissed.

17

### d.   <u>Negligent Hiring, Training, and Supervision (Count II)</u>

"To sustain a claim for negligent or wanton hiring or supervision, training and/or retention, 'the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort.'" *Leahey v. Franklin Collection Serv., Inc.*, 756 F. Supp. 2d 1322, 1328-29 (N.D. Ala. 2010) (quoting *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002); *see also Thomas v. Util. Trailer Mfg. Co.*, No. 1:05cv914, 2006 WL 2480057, at *3 (M.D. Ala. 2006). First, Plaintiff's negligent or wanton hiring claim is due to be dismissed because the Court has dismissed all of Plaintiff's other tort claims. Second, the usual common-law Alabama tort many plaintiffs seek to prove in advance of proving negligent and or wanton hiring in the debt collection context is invasion of privacy. As stated by the Judge Kallon in the Northern District of Alabama, "[c]reditor-debtor cases in which courts have upheld an invasion of privacy claim present far more egregious facts" than those alleged in the present case. *Leahey*, 756 F. Supp. 2d at 1328 (citing *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863 (Ala. 1985) and *Black v. Aegis Consumer Funding Grp., Inc.*, No. 99cv412, 2001 WL 228062, at *4-7 (S.D. Ala. Feb. 8, 2001)). Plaintiff has not alleged an invasion of privacy cause of action nor do the alleged facts support such a cause of action. Accordingly, Plaintiff's negligent or wanton hiring claim is due to be dismissed with prejudice.

e.      **Breach of Contract (Count IV)**

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).  In contrast to her tort claims, Plaintiff has stated a viable breach of contract claim.  Plaintiff alleges, and the Court must accept as true, that Plaintiff has never been in default on either of her mortgages.  Despite her own performance, Plaintiff alleges that Defendants have not performed their obligations through their actions, which include reporting Plaintiff's accounts as being in default, force placing insurance on Plaintiff's accounts when she already had such insurance, and charging tax payment fees on Plaintiff's accounts when she had already paid such taxes.  (Pl.'s Resp. 20.)  Defendant's motion to dismiss Plaintiff's breach of contract claim is due to be denied.

## V.  CONCLUSION

Consistent with the reasoning set forth above, it is ORDERED:

(1)      Defendant's Motion to Dismiss (Doc. # 26) is GRANTED in part and DENIED in part;

(2)      Counts I, II, III, V, VII, and VIII are DISMISSED as to all Defendants with prejudice;

(3)      Count VI is DISMISSED with prejudice as to Defendant Countrywide, and DISMISSED without prejudice as to Defendants BANA and BACHLS, but

19

subject to the limitations set forth in the opinion; and,

(4)    Plaintiff is DIRECTED to file a Second Amended Complaint **on or before March 21, 2012**.  Failure to file a Second Amended Complaint by this date will result in dismissal of the action with prejudice.

DONE this 7th day of March, 2012.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE
